813 P.2d 897

**Eric RADMER and Lillian Radmer, husband and wife, Plaintiffs-respondents,**

v.

**FORD MOTOR COMPANY, a foreign corporation; and Lake City Ford Lincoln Mercury, Inc., an Idaho corporation, Defendants-appellants.**

No. 18459.

Supreme Court of Idaho,
Lewiston, April 1991 Term.

July 5, 1991.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, for defendants-appellants. Robert J. Koontz argued.

Howard & Owens, Coeur d'Alene, for plaintiffs-respondents. Kenneth B. Howard argued.

BAKES, Chief Justice.

This is a products liability action brought by the Radmers (Radmers) against Ford Motor Company and Lake City Ford Lincoln Mercury, Inc. (Ford), for injuries sustained by the Radmers in a one-car accident caused by an alleged defect in the steering mechanism of the Radmers' Ford pickup. The case went to trial and the jury returned a verdict in favor of the Radmers. Ford moved for a judgment notwithstanding the verdict and, alternatively, for a new trial, and the district court denied these motions. Ford appeals this and other decisions of the trial court.

This case arose from a one-car accident that occurred on August 2, 1985, on Highway 3 near Coeur d'Alene. Eric Radmer was driving his 1984 Ford F–150 pickup truck in which his wife, Lillian Radmer, was a passenger. Mr. Radmer alleged that, as the truck crested a hill, the steering "locked up," and he was unable to steer the vehicle. As a result, the truck left the road, traveled down an embankment, and ultimately came to rest near the bottom of the embankment against a tree, injuring the Radmers.

Police officer Larry House investigated the accident. Radmer told House that the accident occurred because the steering wheel pulled to the left and would not respond to attempts to correct it. Officer House hired Don Roberts, a front end mechanic, to examine the vehicle's steering system. Mr. Roberts concluded that before the vehicle was damaged the steering system was functioning properly. The vehicle was next taken to a salvage yard in Spokane, Washington, on the instructions of an adjuster, Eric Jacobsen, who had been hired by Radmer's insurance carrier.

On September 13, 1985, the consulting engineering firm of Pool–Swayne, Inc., was retained by Jacobsen to investigate the cause of the accident. On September 19, 1985, Mr. Jacobsen called the Ford Customer Relations Department and reported to them that Mr. Radmer was claiming that the steering had frozen. Mr. Jacobsen later invited Ford, by letter dated September 20, 1985, to examine the vehicle. On October 25, 1985, Mr. Jacobsen and a Ford representative went to see the truck, and the Ford representative made an initial examination and took some photographs of the truck. On November 12, 1985, the Ford representative contacted Eric Jacobsen and requested another opportunity to see the vehicle, and again another examination was performed.

On December 5, 1985, Mr. Jacobsen wrote Ford and offered to allow Ford to provide its own expert to participate alongside Jacobsen's expert in a disassembly of the power steering system to discover what may have gone wrong. The letter allowed Ford 30 days to make arrangements and stated that Jacobsen's experts would begin the disassembly on January 7th. Mr. Jacobsen received no word from Ford prior to January 7th, and on January 15, 1986, Jacobsen instructed engineer Ken Swayne to inspect and disassemble the vehicle. Swayne performed the initial testing and disassembly on January 21, 1986, and rendered a written report. This report concluded, among other things, that an O-ring on the high pressure hose of the power steering pump assembly was defective and failed, causing power steering fluid to leak from the system, and that this condition was the cause of the Radmers' accident.

In March, 1986, with the exception of several parts, including the power steering unit removed by Swayne, the vehicle was sold to the salvage yard and destroyed sometime thereafter. Sometime after this, Ford again contacted Mr. Jacobsen and asked if Jacobsen would send the remaining parts to Ford or, alternatively, the engineering report produced by Mr. Swayne. Apparently, Jacobsen declined to send the evidence but did provide Ford with a copy of Swayne's report.

On July 29, 1987, the Radmers filed a complaint against Ford alleging negligence, strict liability, and breach of warranty. Thereafter, Ford propounded interrogatories to the Radmers, one of which asked the Radmers to identify the expert witnesses they intended to call and the substance of their testimony. The plaintiffs responded by stating that engineers Ken Swayne and his partner, Edward Pool, had examined the vehicle in question and referenced the report produced by Mr. Swayne.

On October 3, 1988, the Radmers' attorney deposed Mr. Swayne in a videotaped deposition in order to preserve his testimony for trial because Mr. Swayne was leaving the country. The deposition of Mr. Swayne dealt primarily with Mr. Swayne's opinion that the defect in the O-ring on the high pressure hose assembly caused the accident. Mr. Swayne stated in his deposition that although it was mechanically impossible for the steering in the vehicle to lock up from lack of power steering fluid, Mr. Radmer would have perceived that the steering had locked.

On March 30, 1989, Ford deposed Mr. Swayne's partner, Mr. Pool. Mr. Pool testified that although he had not conducted an independent examination, he had reviewed the report of Mr. Swayne and concurred with Swayne's findings. Mr. Pool also indicated in his deposition that the lack of power steering fluid would lead a driver to perceive that the steering on the vehicle had locked up, but that no actual lock-up had occurred.

On July 18, 1989, the Radmers submitted a 28–day pretrial response listing their witnesses and intended exhibits. This response indicated that the Radmers would introduce Mr. Swayne's video deposition at trial and also identified Edward Pool as a witness.

On July 23, 1989, 22 days before the first day of trial, Edward Pool for the first time made his own independent examination and analysis of the cause of the accident. This was accomplished by Pool and plaintiffs' counsel going to the scene of the accident. There they took measurements and, based upon those measurements, Pool performed an accident reconstruction analysis.[1] Ford did not learn of this new testing and accident reconstruction analysis, or Pool's proposed testimony based thereon, until the morning of the first day of trial, after the jury had been empaneled before opening statements. Ford claims that in his deposition Mr. Pool had expressly discounted the possibility that he would perform further substantive testing in this case. At a motion *in limine,* Ford objected to the presentation of evidence that it claimed had not been disclosed through updated responses to discovery. The trial court deferred its ruling until Pool testified. As the trial progressed, prior to Mr. Pool's testimony, Ford again renewed its objection, and the court recognized that failure to supplement the answers to interrogatories might support exclusion of the testimony, but refused to rule in advance that Pool could not testify.

Pool then testified, over objection, concerning his examination of the scene and his opinion as to the cause of the accident based upon his examination and accident reconstruction at the scene, and not based upon the Swayne report's O-ring defect analysis used in his deposition.

At the conclusion of Mr. Pool's testimony, Ford moved for a mistrial, arguing that they were surprised and prejudiced by the testimony. The trial court denied the motion. At the conclusion of trial, the jury returned a verdict in favor of the plaintiffs for roughly $125,000. In response to the jury's verdict, Ford filed alternative motions for judgment notwithstanding the

---

**1.** Accident reconstruction analysis involves a fundamentally different approach to determining the cause of an accident than the approach used where a specific mechanical defect is claimed. In a specific defect case, the focus is primarily upon the product itself to determine if a defect can be identified. With accident reconstruction analysis, such as that claimed here, the experts review a broad array of factors such as the testimony of the parties and investigating officers, the physical circumstances, terrain, topography, driving surface, and the line and path of the vehicle from the point of exit to its final resting place, and postulate a cause of the accident without identifying any specific defect.

verdict and for a new trial. The trial court denied Ford's alternative motions. On appeal, Ford challenges the decision of the trial court in denying its motion *in limine*, motion to exclude the testimony of Edward Pool, motion for mistrial, and alternative motions for judgment notwithstanding the verdict and new trial.

On appeal, Ford claims that the trial court committed reversible error in (1) failing to exclude the expert testimony of Mr. Pool and, (2) admitting expert testimony based on tangible evidence which had been destroyed. Since we believe the trial court erred with respect to the first issue, we do not consider the second.

The issue in this case is governed by Rule 26(e) of the Idaho Rules of Civil Procedure. That rule provides in pertinent part:

> (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as a witness at trial and with regard to expert witnesses the subject matter on which he is expected to testify, and the substance of his testimony.

■ This rule unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon, or otherwise altered in some manner. *Zolber v. Winters*, 109 Idaho 824, 712 P.2d 525 (1986); *Wright and Miller, Federal Practice and Procedure, Supplementation of Responses*, § 2048 (1970).

In general, Rule 26 of the Idaho rules, like its federal analogue, was designed to promote candor and fairness in the pre-trial discovery process. Speaking with reference to Rule 26(b)(4)(A)(i) [2] of the federal rules, the Advisory Committee on Civil Rules which promulgated the original draft of Rule 26 stated:

In cases of this character [involving expert testimony], a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation ... Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

Advisory Committee Notes, rule 26, Fed. Rules Civ.Proc., 28 U.S.C.A. Further illustrating the critical nature of complete and accurate responses regarding expert witnesses in the discovery process, one scholar notes:

It is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved ...– Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon. If the attorney is required to await examination at trial to get this information, he often will have too little time to recognize and expose vulnerable spots in the testimony.

Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan.L.Rev. 455, 485 (1962).

■ Typically, failure to meet the requirements of Rule 26 results in exclusion of the proffered evidence. *Coleco Industries, Inc. v. Berman*, 567 F.2d 569 (3d Cir.1977). Moreover, while trial courts are given broad discretion in ruling on pretrial discovery matters, reversible error has been found in allowing testimony where Rule 26 has not been complied with.

---

**2. Rule 26(b)(4). Trial preparation—Experts.—**

....

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify.....

*Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir.1980).

■ Returning to the facts of this case, Ford maintains that throughout discovery the Radmers asserted that the accident was caused by a defective O-ring in the power steering unit which allowed the power steering fluid to leak out. Ford argues that when the Radmers abandoned that theory in favor of an alternative theory based on an undisclosed accident reconstruction analysis performed by Mr. Pool shortly before trial, they had a duty to immediately disclose the change. Ford did not learn of the change in theories as to the cause of the accident until the first day of trial, and thus they claim they were surprised and prejudiced by virtue of being unprepared to meet that testimony. The Radmers, on the other hand, argue that they never discounted the possibility of performing an accident reconstruction analysis and that they never limited themselves to the specific defect theory. The trial court agreed with the Radmers. After carefully reviewing the record, we disagree with the trial court.

During his deposition, Mr. Pool indicated that he was an expert in the field of accident reconstruction, yet he did not state that he was going to perform an accident reconstruction analysis and rely on those results at trial. At one point in the deposition, Ford's counsel asked Mr. Pool if he had an opinion as to the cause of the accident to which Pool replied:

A. Well, my opinion is that it [power steering pump system] was defective by virtue of the fact that the O-ring was pinched and had not properly sealed, and then there's a number of items of supportive evidence that corroborate that.

In their 28–day pre-trial response, the Radmers stated, consistent with the deposition testimony, that Mr. Pool may testify to the "condition of the parts on the vehicle involved in the incident and the cause of the loss of steering." Here again, the Radmers make no mention of the possibility of performing an accident reconstruction analysis, but only that Pool would testify to the "condition of the parts" and the "cause of the accident." In their interrogatories, Ford asked the Radmers to "[i]dentify all witnesses you intend to call or may call at the trial of this case, and specify the facts to which they will testify." Radmers responded in part by stating: "Edward G. Pool may testify to the condition of the parts on the vehicle involved in the incident and the cause of the loss of steering." Ford's interrogatory number 12 asked the Radmers specifically whether they had engaged an expert and if so to state "his educational background; state whether he performed any test, analysis, or examination ... related to this litigation," and for each expert to state the "substance of his expected testimony." Radmers replied to this interrogatory by stating:

ANSWER: Expert witnesses have not been completely identified to date. This interrogatory will be supplemented as they are determined. Ken Swayne and Edward Pool have examined the products in question-see attached report.

The report referenced in the above answer was Ken Swayne's report which concluded the accident was caused by the defective O-ring. There is no indication that the Radmers would perform an accident reconstruction in the future and rely on that theory at trial. The answer clearly indicates that Mr. Pool would rely on the "attached report." That is consistent with Mr. Pool's deposition testimony wherein he offered his opinion that the accident was caused by a defective O-ring.

As already noted, the Radmers had a duty under I.R.C.P. 26(e) to supplement their responses with respect to the subject matter and substance of their expert's testimony. As far as the substance of the expert's testimony is concerned, the record reveals that the Radmers continuously portrayed to Ford their reliance upon the O-ring defect as their theory of liability. The Radmers did not disclose the fact that Mr. Pool performed a belated accident reconstruction analysis or the results of that analysis until the first day of trial. We believe the Radmers' failure to supplement their discovery responses with respect to this new analysis violated both the spirit

and the letter of Rule 26(e). A similar result occurred in the case of *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856 (7th Cir.1977).

In that case, plaintiff Holiday Inns brought an action to recover for property damage caused by a fire that originated from a deep fat fryer manufactured by the defendant. As in our case, the plaintiffs alleged a single specific defect in the product throughout discovery, *i.e.*, a defective control thermostat. Defendants propounded interrogatories asking plaintiffs if there were any other theories of liability that they intended to pursue, to which plaintiffs replied:

> At this time plaintiff has determined a defective condition of the over-temperature control thermostat which the plaintiff believes created a failure of other components. Investigation continues.

560 F.2d at 858.

At trial, Holiday Inns attempted to offer an alternative theory of liability based on the lack of an oil level sensing device in the fryer. The trial court refused to consider that theory, finding that the plaintiffs had neglected their duty to supplement their discovery responses in violation of Federal Rule 26(e). The trial court's holding was affirmed on appeal. The appellate court stated:

> In view of these failures to supplement answers that resulted in the defendants being surprised at trial by plaintiff's alternative theory, we hold that the district judge acted properly in refusing to let the plaintiff present its alternative theory at trial.

560 F.2d at 858. As in the *Holiday Inns* case, we believe that Radmers breached their obligation to supplement their discovery responses prior to trial, as required by Rule 26, and as a result Ford was unprepared to meet and effectively challenge Radmer's new theory of liability and was prejudiced thereby. Accordingly, we hold that the trial court committed reversible error in allowing that testimony to come in and remand this case for a new trial.

Costs to appellants. No attorney fees awarded.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.