48 P.3d 672

**Davey C. CLARK, Plaintiff–Appellant,**

v.

**Nicole RATY and Dallas Raty, Defendants–Respondents.**

No. 27434.

Court of Appeals of Idaho.

May 30, 2002.

Paul T. Curtis, Idaho Falls, for appellant.

Thomsen Stephens, P.A., Idaho Falls, for respondent. T. Jason Wood argued.

LANSING, Judge.

This appeal challenges the decision of the district court excluding from trial expert testimony of one of the plaintiff's treating physicians because the opinions and the facts underlying those opinions had not been disclosed in discovery responses. We hold that this discovery sanction was reasonable in the circumstances presented here, and therefore affirm.

## I.

## BACKGROUND

In July 1997, defendant Nicole Raty drove an automobile belonging to her father, Dallas Raty, through a stop sign and struck Clark's vehicle. The accident caused Clark to suffer neck and back pain, for which he received medical treatment. Nearly two years later, in May 1999, Clark filed suit against the Ratys for the injuries sustained in the accident. In defense, the Ratys alleged that some or all of Clark's injuries pre-existed the accident and were the result of factors not caused by the Ratys, including pre-existing rheumatoid arthritis and degenerative disk and joint disease. Trial was scheduled for February 13, 2001.

In response to the Ratys' interrogatories, Clark identified his treating physicians, including Dr. Craig Scoville, as potential witnesses, and he made his medical records available, but he did not state any medical opinions to which Dr. Scoville was expected to testify nor any facts offered to support those opinions. Two weeks before the trial date, the Ratys filed a motion in limine to preclude expert testimony as to any opinions that had not been disclosed in discovery responses. At a February 5, 2001 hearing on the motion, Clark's counsel represented that Dr. Scoville would testify "that the treatment rendered by himself was more probable than not related to plaintiff's accident," and that "the medical treatment given by other medical care providers was reasonable, necessary, and related to plaintiff's accident." The district court informed Clark's counsel that if the witness was going to testify to an opinion about the causal relationship between Clark's symptoms and the accident in light of pre-existing conditions, Clark must be more specific in his disclosure. The court held that Clark's interrogatory answers and production of medical records had not been sufficient to adequately disclose this component of Dr. Scoville's proffered opinion and the facts and data upon which they were based. Rather than excluding such testimony, however, the court allowed Clark until noon on February 7 to make the necessary disclosures and further ordered that if the Ratys wished to depose Dr. Scoville, he must be made available for deposition by Friday, February 9. Clark did not produce information on Dr. Scoville's opinion until February 9, two days after the deadline. The information was presented in the form of a letter which stated that although Clark had been afflicted with rheumatoid arthritis since he

was twenty-one years old, this condition was not present in his neck and back, and that his neck and back pain was a consequence of a different affliction, spondylosis. According to the letter, spondylosis is a degenerative arthritis that could have been aggravated by the accident. Clark wished to present this medical opinion in support of his contention that his then-current neck and back pain, and a consequent need for surgery, was attributable to the accident and not to pre-existing rheumatoid arthritis.

At a hearing on February 12, one day before commencement of the trial, the district court held that because of Clark's untimely disclosure, he would not be allowed to present Dr. Scoville's opinion regarding the absence of rheumatoid arthritis in Clark's neck and back or the relationship between Clark's neck and back pain and the accident. The court held, however, that Dr. Scoville would be allowed to testify about matters that had already been disclosed through the production of the records on his treatment of Clark.

The trial proceeded as scheduled, and the jury awarded damages to Clark in the amount of $10,100, a sum that was approximately one-tenth of that requested by Clark for the cost of future surgeries. Clark appeals, contending that he is entitled to a new trial because the district court erred in excluding Dr. Scoville's expert opinion.

## II.

## ANALYSIS

**A. Discovery Rules Required that Clark Respond to Interrogatories Concerning His Treating Physician's Opinion.**

Clark first contends that the exclusion of Dr. Scoville's opinion testimony as a discovery sanction was erroneous because, under the Idaho Rules of Civil Procedure, Clark was not required to respond to discovery requests concerning the facts and opinions to which Dr. Scoville would testify. Clark points out that Dr. Scoville's testimony is not governed by I.R.C.P. 26(b)(4),[1] which places limitations on the discovery of experts' opinions and knowledge that was "acquired or developed in anticipation of litigation or for trial," because Dr. Scoville is a treating physician who acquired his knowledge about the case from his examination and treatment of Clark. Because Dr. Scoville's testimony is not covered by Rule 26(b)(4), Clark argues, it is not subject to discovery at all.

Although Clark is correct that a treating physician's knowledge that was not developed for purposes of litigation is not subject to Rule 26(b)(4), the conclusion that he then draws—that such testimony is entirely sheltered from discovery—draws no support from the language of that rule or the remaining discovery rules. Rule 26(b)(4) restricts the methods of discovery that may be utilized to obtain the opinions and information developed by experts for purposes of the litigation. The rule does *nothing* to prohibit or limit discovery of expert opinions that were *not* developed for litigation purposes. Therefore, expert testimony that is not subject to the discovery limitations of Rule 26(b)(4) is not immune from discovery but, to the contrary, is subject to the full panoply of discovery that is otherwise authorized by the civil rules. This is apparent from the opening sentence of the rule which recognizes that except as to experts whose information was acquired for purposes of the litigation, facts known and opinions held by experts are "oth-

---

1. Rule 26(b)(4) states:
   Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
   (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the opinions to which the expert is expected to testify and to state the underlying facts and data upon which the expert opinions are based, in conformity with Rule 705 I.R.E. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

erwise discoverable" under the provisions of subdivision (b)(1) of Rule 26.

The effect of Rule 26(b)(4) was artfully explained by the United States District Court for the Northern District of Mississippi in *Lee v. Knutson*, 112 F.R.D. 105 (N.D.Miss.1986), where the court rejected an argument identical to Clark's with regard to the corresponding federal rule:

> There is ample authority for the proposition that an expert witness, such as a treating physician, whose entire testimony will be based upon his own examination and treatment of a party, is not subject to the provisions of Rule 26(b)(4). Such a non–26(b)(4) expert is subject to discovery without the limitations imposed by Rule 26(b)(4).
>
> While that much is true, it does not follow, as plaintiffs argue that they were not required to disclose their intention to use these six medical witnesses in response to defendant['s] discovery requests. Rule 26(b)(4) does not create a new right of discovery. Instead, as to 26(b)(4) experts, it limits the general scope of discovery as defined by Rule 26(b)(1). While this means that 26(b)(4) experts are subject to discovery only as provided in Rule 26(b)(4), it does not mean that non–26(b)(4) experts to be called at trial are not discoverable by way of interrogatories similar to those described in Rule 26(b)(4)(A)(i) simply because they are also discoverable by other means.
>
> Rule 26(a) lists the allowable methods of discovery, and Rule 26(b)(4)(A)(i) limits that choice to the interrogatories therein described when discovery is sought concerning 26(b)(4) experts expected to be called as trial witnesses. In all other respects, including discovery concerning non–26(b)(4) trial experts, the choice of discovery methods is unlimited and may include interrogatories, as well as requests for production.
>
> ... There is simply no reason to hold that non–26(b)(4) trial experts may not be discovered by way of the same interrogatories as 26(b)(4) trial experts. This result flows from precedent as well as logic and common sense.

> The court agrees with plaintiff that non–26(b)(4) experts are, for purposes of discovery, to be dealt with as ordinary witnesses. The Rules contain no restrictions as to the methods of discovery which may be employed to learn the identity of such witnesses, nor the facts which they know *and the opinions held by them.*

*Id.* at 108 (emphasis added) (internal citations omitted).

A proffered interpretation similar to that offered by Clark was also soundly rebuffed by a federal district court in *Chakales v. Hertz Corp.*, 152 F.R.D. 240 (N.D.Ga.1993), where the court observed:

> Plaintiffs' interpretation of ... Rule 26 is that because Rule 26(b)(4) prevents an opposing party from employing informal means of discovery, such as interviews without court supervision, with regard to opinions held by experts when such opinions were "acquired or developed in anticipation of litigation or for trial," it follows that a party need not answer formal discovery, such as [an interrogatory] in this case, with regard to experts whose expert opinions were *not* acquired or developed in anticipation of litigation. To state the argument is to reveal its utter lack of merit.

*Id.* at 244 (emphasis in original).

In sum, Rule 26(b)(4) is inapplicable and irrelevant to the discovery of information acquired by Dr. Scoville as a treating physician, and it provides no justification for Clark's failure to respond to the Ratys' interrogatories seeking disclosure of all of Dr. Scoville's opinions that Clark wished to present at trial. Clark not only had a duty pursuant to I.R.C.P. 33(a)(2) to answer the Ratys' interrogatories asking for the facts and opinions to which his expert witnesses would testify, but also a duty to seasonably update his answers pursuant to I.R.C.P. 26(e)(1)(B). *See Clark v. Klein*, 137 Idaho 154, 45 P.3d 810 (2002); *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991).

**B. The Exclusion of Dr. Scoville's Opinion Testimony as a Discovery Sanction was not an Abuse of Discretion.**

Clark next argues that even if he was required by the discovery rules to respond to

interrogatories regarding Dr. Scoville's opinions, the district court abused its discretion by excluding Dr. Scoville's testimony about previously undisclosed opinions. Instead, Clark contends, the district court should have continued the trial, which would have allowed the Ratys to prepare to rebut Dr. Scoville's newly disclosed opinions.

The exclusion of evidence is authorized, though not required, by I.R.C.P. 26(e)(4) as a sanction for a party's failure to seasonably supplement responses to discovery requests. The imposition of discovery sanctions is within the discretion of the trial court, and that court's decision will not be overturned on appeal absent a manifest abuse of discretion. *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996). Such an abuse of discretion has been found in the admission of expert testimony that was not properly disclosed where the admission of the evidence seriously prejudiced the opposing party. *See Clark*, 137 Idaho at 157, 45 P.3d at 813; *Radmer*, 120 Idaho 86, 813 P.2d 897. Indeed, in *Radmer*, the Idaho Supreme Court said that failure to meet the requirements of Rule 26 "typically" results in exclusion of the proffered evidence. The potential for prejudice to the opposing party from the admission of evidence that was not disclosed in discovery is particularly acute with respect to expert testimony, for as the court noted in *Radmer*, "[e]ffective cross-examination of an expert witness requires advance preparation," and "effective rebuttal requires advance knowledge of the line of testimony of the other side." *Radmer*, 120 Idaho at 89, 813 P.2d at 900.

The prospect of such prejudice was present in this case. Dr. Scoville's records regarding his treatment of Clark had been disclosed and indicated that Dr. Scoville diagnosed Clark as suffering from rheumatoid arthritis of longstanding duration. The disclosure, two business days before the start of trial, of Dr. Scoville's opinion that the rheumatoid arthritis did not involve Clark's cervical or lumbar spine raised new questions about causation and cast the trial issues in a new light. The prejudice to the Ratys' ability to respond to this opinion, due to its late disclosure, was substantial.

It is also significant that the trial court did not resort to exclusion of the evidence as the first remedy for Clark's discovery violation. When Clark's failure to disclose Dr. Scoville's anticipated opinion testimony first came to the trial court's attention at the February 5, 2001 hearing, the court gave Clark two days within which to provide the requisite disclosure and required that Dr. Scoville be made available for deposition by February 9.[2] It was only after Clark failed to comply with these new deadlines that the court resorted to exclusion of the expert testimony.

Clark's argument that the district court in these circumstances was required to continue the trial rather than exclude Dr. Scoville's late-disclosed opinions is unpersuasive in view of the absence of any legitimate explanation as to why Clark's counsel had not contacted Dr. Scoville to determine the nature and scope of his opinions much earlier. As the district court commented, it should have been anticipated, in a case that was about the interplay between the effects of an auto accident and pre-existing arthritis, that the opinions of a treating rheumatologist would be important. Counsel's neglect of investigation and trial preparation does not obligate a trial court to postpone a trial as the only acceptable sanction. In addition, a continuance in this case would have been detrimental to the Ratys, who had already incurred the effort and expense of trial preparation when on February 12, the day before trial was to commence, Clark sought relief from the February 7 deadline for disclosure of Dr. Scoville's opinion.

We conclude that the district court gave a measured and reasonable response when it reacted to Clark's discovery violation with a two-step process, first allowing him two additional days within which to make a proper disclosure, and, when that deadline was not met, precluding Dr. Scoville's testimony to

---

2. Even this remedy would have been burdensome to Ratys' attorneys, requiring that they direct their attention to an expert witness deposition two business days before trial and thereafter obtain a response from their own experts.

new opinions [3] or their foundational data. No abuse of discretion has been shown.

### C. Attorney Fees on Appeal

■ The Ratys request an award of attorney fees on appeal pursuant to I.C. § 12–121 and Idaho Appellate Rule 41(a). These provisions allow an award of attorney fees in the discretion of the appellate court if an appeal was brought frivolously, unreasonably or without foundation. *Keller v. Rogstad,* 112 Idaho 484, 489, 733 P.2d 705, 710 (1987); *Excel Leasing Co. v. Christensen,* 115 Idaho 708, 712, 769 P.2d 585, 589 (Ct.App.1989). Because we conclude that Clark's challenge to the discovery sanction imposed by the court, though unsuccessful, was not frivolous, no attorney fees will be awarded.

### III.

### CONCLUSION

The district court's order excluding expert opinion testimony as a sanction for discovery violations is affirmed. Costs, but not attorney fees, are awarded to respondent.

Chief Judge PERRY and Judge Pro Tem WILPER, concur.

**3.** Clark asserts that the district court did not merely exclude Dr. Scoville's untimely-disclosed opinions but precluded the doctor from testifying at all. We disagree. It is clear that the district court intended only to preclude opinions and supporting data that had not been disclosed in discovery responses. The order in limine that emerged from the February 5 hearing referred only to expert opinions that had not been fully disclosed in response to discovery requests. Later, when Clark sought relief from this order because he had not met the February 7 deadline, the court ruled from the bench that it would "adhere" to the order in limine previously entered, and then clarified: "and to the extent that you have made the disclosures as to Dr. Scoville appropriately, if any, then you can use him. If not, then I think you are restricted to what he can say in terms of facts." A written order to reflect this ruling, which was drafted by the Ratys' counsel at the court's request, unfortu-nately contains language that "Dr. Scoville shall be excluded as a witness at trial," which did not accurately mirror the ruling from the bench. However, a subsequent sentence in the same order prohibited the parties only from eliciting evidence of "any of the *new* opinions of Dr. Scoville not previously disclosed," (emphasis added). Clark did not object to the form of the order nor bring to the district court's attention its ambiguity or inconsistency with the court's oral rulings. We have no doubt that, if Clark had done so, the court would have reiterated the explicit ruling that it had made from the bench, which excluded only Dr. Scoville's untimely-disclosed opinions and underlying data, but express-ly allowed Dr. Scoville's testimony as to any facts or opinions that had been disclosed in response to discovery. On this record we cannot accept Clark's implication that the content of the writ-ten order dissuaded him from calling Dr. Sco-ville to testify at all.