136 P.3d 338

James R. EDMUNDS and Janice Edmunds, husband and wife, Plaintiffs–Appellants,

v.

Thomas KRANER, M.D., Defendant,

and

St. Alphonsus Regional Medical Center, Defendant–Respondent.

No. 30862.

Supreme Court of Idaho, Boise, January 2006 Term.

May 3, 2006.

E. Lee Schlender Chartered, Mountain Home, argued for appellants.

Givens, Pursley, LLP., Boise, for respondents. Karl T. Klein argued.

BURDICK, Justice.

Appellants James (James) and Janice (Janice) Edmunds (collectively "the Edmunds") filed a complaint against numerous defendants, including Respondent St. Alphonsus Regional Medical Center (St.Alphonsus). The Edmunds allege that overdoses of the antibiotic Gentamicin administered while James was a patient at St. Alphonsus led to neurotoxicity and ototoxicity and resulted in James being totally and permanently disabled. Shortly before trial St. Alphonsus moved for summary judgment, which the district court granted. This case comes to this Court on the Edmunds' appeal from that judgment. We affirm in part, reverse in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Following surgery to repair a hiatal hernia, James lapsed into a coma. Janice then had James life-flighted to St. Alphonsus. There, James was treated by Dr. Thomas Kraner, another defendant in this action. Forty-seven days later, Dr. Kraner began treating James with Gentamicin. Dr. Kraner ordered that James receive Gentamicin in a single, large daily dose. He consulted with the St. Alphonsus pharmacists to determine the initial dose necessary to achieve his treatment goals. The pharmacy staff then monitored James to ensure that the doses ordered resulted in the desired levels of Gentamicin in James' blood stream. The pharmacists periodically adjusted the Gentamicin doses. Ten days after receiving his first dose James' condition improved, and Dr. Kraner discharged him from St. Alphonsus. James continued to receive Gentamicin for two-weeks after his discharge.

James began experiencing dizziness, vertigo and tinnitus, and was diagnosed with gentamicin-related ototoxicity. The Edmunds then filed a complaint against St. Alphonsus and other defendants, alleging that the defendants had negligently treated James with excessive doses of Gentamicin for excessive periods of time. St. Alphonsus commenced discovery and served its first set of interrogatories on the Edmunds. St. Alphonsus asked the Edmunds to disclose their expert witnesses and asked them to identify every person who purported to have knowledge of the standard of care for St. Alphonsus in treating James and who communicated with the Edmunds' expert witnesses. A few months later, the district court held a status conference with all the parties involved. During this conference the court set the deadlines for the parties to disclose only the names of their expert witnesses; the pretrial order did not require the parties to disclose any other information. The court then issued a notice of trial setting containing these same deadlines.

Following this conference, the Edmunds responded to St. Alphonsus's interrogatories and disclosed Dr. Ezam Dajani, Dr. Bruce Grossman, and Dr. Lawrence Hollander as their expert witnesses. Although not called for by the pretrial order, in response to St. Alphonsus's interrogatories the Edmunds also provided the experts' curriculum vitas and their preliminary opinions based on a review of James' medical records. The deadline for expert witness disclosure set by the court passed without the Edmunds disclosing any further experts.

Prior to St. Alphonsus and other defendants disclosing their expert witnesses, the Edmunds moved for partial summary judgment on the issue of liability. In support of this motion, they filed affidavits from Drs. Dajani and Hollander. A month later, St. Alphonsus disclosed their expert witnesses and filed affidavits from two experts in opposition to the Edmunds' motion for summary judgment. The Edmunds withdrew their motion. They then disclosed that they had retained a fourth expert witness, Dr. John Rotschafer, but failed to provide the information requested by St. Alphonsus in its interrogatories at that time.

St. Alphonsus moved to exclude Dr. Rotschafer's testimony. Eight days later, the Edmunds filed a motion to allow the supplementation of expert witness testimony to include Dr. Rotschafer's testimony and finally disclosed Dr. Rotschafer's expert opinions and testimony.[1] St. Alphonsus opposed this motion. The court disallowed Dr. Rotschafer's testimony. Just prior to the hearing, the Edmunds filed expert witness supplementation updating the opinions of Drs. Dajani and Hollander.

The following March, 2004, St. Alphonsus filed a motion for summary judgment. In opposition to this motion, the Edmunds filed a second affidavit of Dr. Hollander containing the opinions disclosed in the earlier expert witness supplementation. The Court struck this affidavit as untimely. The district court then granted St. Alphonsus's motion for summary judgment and requested that St. Alphonsus submit written findings of fact and conclusions of law, which it adopted verbatim on the same day the Edmunds filed their opposition to the proposed findings and conclusions.

## II. ISSUES ON APPEAL

The Court must determine whether the district court abused its discretion by excluding the testimony of Dr. Rotschafer and striking the second affidavit of Dr. Hollander. We must also decide if the district court erred in granting St. Alphonsus's motion for

summary judgment and abused its discretion by refusing to limit the number of expert witnesses during discovery. Finally, this Court must determine whether the district court erred by adopting verbatim St. Alphonsus's proposed findings of fact and conclusions of law.

## III. STANDARD OF REVIEW

■■■ When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id.*

■ We have held that the question of admissibility of affidavits under Idaho Rule of Civil Procedure 56(e) is a threshold question to be analyzed before applying the liberal construction and reasonable inferences rules required when reviewing motions for summary judgment. *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994). The Court must look at the affidavit or deposition testimony and determine whether it alleges facts, which if taken as true, would render the testimony admissible. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002).

■ When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Id.* at 163–64, 45 P.3d at 819–20.

---

1. It is unclear from the face of this motion pursuant to which rule the Edmunds made this motion.

## IV. ANALYSIS

Although the ultimate issue in this case is whether the district court erred in granting St. Alphonsus's motion for summary judgment, in order to determine that issue it is necessary to examine the trial court's evidentiary rulings. Additionally, the parties have raised issues relating to the district court's adoption of St. Alphonsus's proposed findings of fact and conclusions of law, the number of expert witnesses disclosed by St. Alphonsus and whether St. Alphonsus is entitled to attorney's fees on appeal. Each of these will be addressed in turn.

### A. Did the district court abuse its discretion by excluding the testimony of Dr. Rotschafer and Dr. Hollander?

The Edmunds argue the district court erred by excluding the testimony of Dr. Rotschafer and by striking the second affidavit of Dr. Hollander. They contend the court should have allowed them to supplement their discovery responses to include Dr. Rotschafer under rule 26(e), Idaho Rules of Civil Procedure, and should not have prevented them from calling Dr. Rotschafer as a rebuttal witness. The Edmunds also assert that Dr. Hollander did not need to meet the requirements of Idaho Code §§ 6–1012 and 6–1013 until his opinion was offered in opposition to St. Alphonsus's motion for summary judgment and that I.R.C.P. 26(e) allows for supplementation of expert witness opinions, so there was nothing wrong with Dr. Hollander's second affidavit. Conversely, St. Alphonsus argues that evidentiary decisions are left to the sound discretion of the trial court, and the lower court did not abuse its discretion when excluding Dr. Rothschafer's testimony and striking Dr. Hollander's second affidavit.

Before analyzing the decisions to exclude expert testimony and the decision to grant summary judgment to St. Alphonsus, it is important to understand more clearly the underlying facts of the case and the way in which discovery proceeded. St. Alphonsus is being sued for the care its pharmacists provided in determining the initial dosage of Gentamicin James received and its subsequent monitoring, not for the care provided by the physician-defendants. Dr. Hollander was disclosed as an expert witness prior to the district court's deadline. Later, in support of the Edmunds motion for summary judgment, Dr. Hollander's opinion was reduced to affidavit form. It stated the he had become familiar with the local standard of care for "all health care providers." Additionally, this first affidavit analyzed St. Alphonsus's breach using a multiple-daily dosing regime for Gentamicin as the local standard. These opinions were disclosed prior to any disclosure by St. Alphonsus.

After these disclosures, St. Alphonsus disclosed the names of three expert witnesses. A month later, in response to interrogatories by the Edmunds, St. Alphonsus provided the facts and opinions of these experts. Three days after receiving St. Alphonsus's responses outlining its experts' opinions, the Edmunds disclosed Dr. Rotschafer as an expert witness, but did not provide his opinion at that point. Then, more than two months after St. Alphonsus's initial expert witness disclosure and in opposition to the Edmunds motion for summary judgment, St. Alphonsus filed two expert witness affidavits. Each of these affidavits states that Drs. Hollander and Dajani did not acknowledge that the single-daily dosing regime for Gentamicin is the local standard of care. Presumably in response to these affidavits and St. Alphonsus's expert witness disclosures, the Edmunds attempted to utilize Dr. Rotschafer as an expert and also filed supplemental opinions for Drs. Hollander and Dajani opining that St. Alphonsus breached the local standard of care for the single-daily dosing regime. Likewise, the disclosure of Dr. Rotschafer's opinion, slightly more than one month after St. Alphonsus filed its expert witness affidavits, deals with the single-daily dosing regime. It is these opinions surrounding the local standard of care that are at issue.

A trial court has authority to sanction parties for non-compliance with pretrial orders, and sanctions may include those enumerated in I.R.C.P. 37(b)(2)(B), (C) and (D) for discovery violations. I.R.C.P. 16(i). The imposition of such sanctions is committed to the discretion of the trial court, and we will

not overturn such a decision absent a manifest abuse of that discretion. *S. Idaho Prod. Credit Ass'n. v. Astorquia,* 113 Idaho 526, 528, 746 P.2d 985, 987 (1987). When determining whether a district court abused its discretion, this Court considers three factors: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether it acted within the boundaries of its discretion and consistently with applicable legal principles, and (3) whether it reached its decision through an exercise of reason. *Lamar Corp. v. City of Twin Falls,* 133 Idaho 36, 40, 981 P.2d 1146, 1150 (1999).

### 1. Dr. Rotschafer

■ After the pretrial order deadlines for disclosing the names of expert witnesses had passed and after St. Alphonsus disclosed its expert witnesses and their preliminary opinions, the Edmunds sought to allow Dr. Rotschafer as an expert witness. St. Alphonsus opposed the Edmunds' motion to supplement and requested sanctions pursuant to I.R.C.P. 16(i) and 37(b)(2)(B). The district court determined that Dr. Rotschafer would not be allowed to testify, even as a rebuttal witness.

Here, the district court did not abuse its discretion by excluding Dr. Rotschafer's testimony. The trial court recognized its discretion, used reason, and acted within the boundaries of applicable legal principles. First, the hearing transcript makes clear that the district court understood it had discretion in ruling on this motion. The lower court reasoned that the Edmunds had failed to demonstrate an acceptable reason to extend the discovery deadlines previously imposed by the court and concluded that in order for the parties to be ready for mediation and trial Dr. Rotschafer's testimony should not be allowed. We affirm the district court's decision excluding Dr. Rotschafer's testimony.

■ Though we affirm the district court's order regarding Dr. Rotschafer's testimony, we believe it appropriate to comment on the practice of issuing discovery orders that fail to allow plaintiffs to add witnesses in response to defendants' witness disclosures. The purpose of our discovery rules is to facilitate fair and expedient pretrial fact gathering. It follows, therefore, that discovery rules are not intended to encourage or reward those whose conduct is inconsistent with that purpose. Discovery orders of the kind in this case, however, give defendants every incentive to withhold information until after the plaintiff's disclosure deadline has passed. Our Court of Appeals rightly observed that these orders "reward the defendant for stonewalling." *Priest v. Landon,* 135 Idaho 898, 901, 26 P.3d 1235, 1238 (Ct. App.2001). We are of course mindful that the Rules of Civil Procedure equip both sides with tools to ensure fair pretrial procedure, *see* I.R.C.P. 16, 26, and we have little sympathy for attorneys who do not utilize these tools to the extent reasonable. But we do not look favorably upon discretionary decisions by district judges that encourage last-minute witness disclosure and unreasonably prevent plaintiffs from responding, particularly in complex medical malpractice cases where experts will be furnishing the jury with the bulk of the necessary, and often technical, facts.

### 2. Dr. Hollander

Prior to deciding St. Alphonsus's motion for summary judgment, the district court, upon St. Alphonsus's motion, struck the supplemental affidavit of Dr. Hollander. After determining that the affidavit of Dr. Dajani did not contain adequate foundation as to the local standard of care, the district court examined Dr. Hollander's two affidavits. The court found that the first affidavit, which was "timely filed" under the pre-trial order, did not address the standard of care for pharmacists. Turning to Dr. Hollander's second affidavit, the lower court noted that it was not filed until almost a year after the discovery deadline for the naming of expert witnesses, two months before trial, and determined that because it contained opinions based on the single-daily dosing regime as the local standard of care and opinions regarding pharmacists' standard of care that were not contained in his first affidavit, the issue of admissibility turned on whether it was filed "too late." The court then struck the affidavit as being untimely under its discovery order and I.R.C.P. 26.

As a threshold matter, to be admissible in a medical malpractice action, expert testimony must demonstrate the expert's familiarity with the applicable standard of care for a particular profession for the relevant community and time, and the proponent must show the basis for the expert's knowledge. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000). Idaho Code §§ 6–1012 and 6–1013 impose requirements on an expert's testimony in a medical malpractice case. Idaho Code § 6–1012 requires a plaintiff to affirmatively prove by direct expert testimony that the health care provider negligently failed to meet the community standard of health care, as it existed at the time and place of the alleged negligent act. Idaho Code § 6–1013 requires that "the expert must show that he or she actually holds the opinion, that it is held with a reasonable degree of medical certainty, and that he or she is not only an expert but has actual knowledge of the applicable community standard." *Kolln*, 130 Idaho at 329, 940 P.2d at 1148.

However, the district court did not base its decision to strike Dr. Hollander's second affidavit on a failure to lay an adequate foundation as required by these sections. Instead, the decision was based on the timeliness of the disclosure of the opinions set forth in the affidavit and based on a pretrial order that only ordered the disclosure of the names of expert witnesses. The district court believed that its very brief order governing the timing of expert witness disclosure somehow superseded the statutes and rules surrounding such disclosures in medical malpractice cases. This belief was incorrect. As a result, the lower court's actions were outside the boundaries of applicable legal principles and an abuse of discretion.

First, the order governing expert witness disclosure simply stated: "Plaintiff's experts to be disclosed by April 14, 2003." There was no indication that this disclosure must contain any information relating to the local standard of care. It simply required that the names of the Edmunds' experts be disclosed by a certain date.

Second, Idaho law specifically contemplates that expert testimony can change after the initial disclosure. Idaho Rule of Civil Procedure 26(e)(1)(B) requires that litigants supplement discovery responses as to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony." This Court has held that this rule "unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony *where the initial responses have been rejected, modified, expanded upon or otherwise altered in some manner*." *Clark v. Klein*, 137 Idaho 154, 157, 45 P.3d 810, 813 (2002) (quoting *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991)) (emphasis added). In fact, litigants are subject to sanctions, including the exclusion of expert testimony, when they have failed to supplement an expert's opinion. *See, e.g., Radmer*, 120 Idaho at 91, 813 P.2d at 902.

Third, it does not change the above analysis that the opinion contained in Dr. Hollander's second affidavit is virtually identical to the opinion of Dr. Rotschafer. St. Alphonsus makes much of this fact, arguing that this affidavit "was nothing but the Edmunds' attempt to circumvent the trial court's earlier decision excluding Dr. Rotschafer's untimely opinions." However, because the change in Dr. Hollander's opinion affects only his credibility, it should not be addressed by a trial judge at summary judgment, *see Stanley v. Lennox Indus., Inc.*, 140 Idaho 785, 788–89, 102 P.3d 1104, 1107–08 (2004), and cannot serve as the basis for striking his affidavit.

Likewise, any similarity between Dr. Rotschafer's and Dr. Hollander's opinion cannot serve as the basis for striking Dr. Hollander's testimony because Dr. Rotschafer's testimony was excluded based on procedure, not on the substance of his testimony. Nothing in Idaho law prevents experts from consulting each other or from holding the same opinion. Additionally, the Edmunds supplemented Dr. Hollander's initial opinion in October, 2003. This supplement meets the requirements of I.R.C.P. 26(e)(1)(B) and

coming eight months before trial is a seasonable supplementation of Dr. Hollander's opinion.

The drafters of Rule 26 noted that "seasonably" was very imprecise and left considerable discretion to the trial judge. *Hopkins v. Duo–Fast Corp.*, 123 Idaho 205, 213, 846 P.2d 207, 215 (1993) (Bakes, C.J., concurring). This Court has not yet announced a more precise definition of "seasonably." However, as Justice Bakes noted in *Hopkins:* "an important inquiry in determining whether a response was given 'seasonably' is: was the opposing party *given an opportunity for full cross examination?* If 'yes,' then there probably would be no abuse of discretion in admitting the testimony." 123 Idaho at 213, 846 P.2d at 215 (Bakes, C.J. concurring) (citing *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991)). St. Alphonsus was afforded a full opportunity not only to cross-examine Dr. Hollander as to these newly expressed opinions because the supplementation was eight months prior to trial, but also to undertake additional discovery at no or very little additional cost as they had not yet deposed Dr. Hollander. Therefore, the supplementation of Dr. Hollander's opinion was seasonable.

■ Here, the trial court's decision essentially added the requirements of I.C. §§ 6–1012 and 6–1013 to his pretrial order, which did not give the Edmunds notice that they would be held to this standard in their initial disclosures, and ignored that Idaho law and rules of civil procedure contemplate that expert opinions can change and develop during the course of litigation. The pretrial order and subsequent decision also denied the Edmunds an opportunity to respond to or rebut St. Alphonsus's evidence. Moreover, this decision was based on an incorrect understanding of discovery procedure. While a court may properly order parties to disclose expert witnesses by a deadline, a brief order dictating the date of disclosing only the names of expert witnesses cannot trump the requirement of I.R.C.P. 26(e)(1)(B) that parties seasonably supplement their discovery responses as new information is learned or expert opinions change. This does not mean a trial judge cannot issue a more detailed pretrial order for orderly discovery in complicated cases that would further clarify the general rules of discovery. Dr. Hollander's supplementation of his opinion was reasonable under I.R.C.P. 26(e)(i)(B) and the Court holds that the decision to strike Dr. Hollander's supplemental affidavit was an abuse of discretion.

By so holding, we are not sanctioning either party's conduct. It certainly appears that counsel for each side engaged in strategies inconsistent with the spirit of our discovery rules. Our pretrial procedure rules have certainly created a more active and managerial role for the judge in the adjudication process. *See* I.R.C.P. 16, 26; *see also* Judith Resnick, *Managerial Judges*, 96 Harv. L.Rev. 374, 378–79 (1982) (noting that federal pretrial procedure rules have increased the judicial role in managing pretrial phases of cases, calling on them to be mediators, negotiators and planners, as well as adjudicators). However, much of the responsibility for the orderly movement of a case to conclusion lies first with the attorneys themselves. Yet, courts also must maintain order in this process when their leadership is necessary. It is clear under our rules that courts must remain disinterested, but may not proceed disconnected from the case. We expect trial courts to actively manage discovery through the use of appropriate pretrial orders and pretrial conferences.

**B. Did the district court err in granting St. Alphonsus's motion for summary judgment?**

Since Dr. Hollander's second affidavit was admissible, the next issue becomes whether his affidavit created a genuine issue of material fact sufficient to survive summary judgment. The Edmunds argue that Dr. Hollander's second affidavit did so. Conversely, St. Alphonsus contends that even if Dr. Hollander's second affidavit is admissible, it does not lay an adequate foundation for his opinions because it fails to specify the applicable standard of care and, furthermore, it fails to establish that St. Alphonsus breached the local standard of care.

■ In order to survive summary judgment in a medical malpractice case, a plain-

tiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by Idaho Code § 6–1013, showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the expert witness has actual knowledge of the applicable community standard of care to which his expert opinion testimony is addressed. *Id.* (citing *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 937 P.2d 1212 (1997)).

The applicable community standard of care is defined in Idaho Code § 6–1012. It is: (a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; (b) as such standard existed at the time of the defendant's alleged negligence; and (c) as such standard existed at the place of the defendant's alleged negligence. *Id.* (internal citations omitted).

■■■ Moreover, an affidavit under Rule 56(e) of the Idaho Rules of Civil Procedure must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the matters contained in the affidavit. I.R.C.P. 56(e). When an affidavit is presented by a party opposing a motion for summary judgment, the affidavit "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Also, the party opposing summary judgment must show that the affidavit is based upon the witness's personal knowledge and that it sets forth facts as would be admissible in evidence. *Kolln*, 130 Idaho at 331, 940 P.2d at 1150. "The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

■■■ An expert testifying as to the standard of care in medical malpractice actions must show that he is familiar with the standard of care for the particular health care profession for the relevant community and time. *Perry*, 134 Idaho at 51, 995 P.2d at 821. The expert must also state how he or she became familiar with that standard of care; this can include an out-of-area expert obtaining knowledge of the local standard of care by inquiring of a local specialist. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Dr. Hollander attempted to become familiar with the local standard of care in this way.

Contrary to St. Alphonsus's assertion, Dr. Hollander's supplemental affidavit contains an adequate foundation for his opinions. Dr. Hollander states:

I was advised that the standard of care and the protocols, procedures and methods for such dosing and monitoring are the same for all major hospitals in Boise including St. Alphonsus and St. Lukes; the standard of care and protocols with respect to dosing and monitoring were the same as those discussed in my original affidavit as well as the supplementation of my testimony herein filed. Said standards with respect to once a day dosing or ODA regime are based upon a patient's weight, trough levels and renal function. That the standard of care and the protocols and procedures for such dosing and monitoring were no different in 2000–2001 in Boise, Idaho, as in any other hospital or [sic] the same or similar size in the United States and that there is therefore a national standard of care with respect to the administration, dosage and monitoring of Gentamicin. I can state with medical certainty that the standards applicable in Boise and the remainder of the United States as verified and confirmed by myself and my discussions with the Pharmacy Department at St. Lukes Hospital in Boise, Idaho, did not allow peak concentrations and trough levels which would result in Mr. Edmunds developing ototoxicity.

■■■ Statements indicating that Dr. Hollander familiarized himself with the local standard of care by contacting a local pharmacist and statements that there is a nation-

al standard of care are sufficient to lay the foundation for Dr. Hollander's testimony. *See Dulaney,* 137 Idaho at 164, 45 P.3d at 820; *Perry,* 134 Idaho at 51, 995 P.2d at 821 ("An expert's review of a deposition stating that the local standard does not vary from the national standard, coupled with the expert's personal knowledge of the national standard, is sufficient to lay a foundation for the expert's opinion.").

■ Additionally, St. Alphonsus's expert witness affidavits filed in support of the motion for summary judgment show that there is a genuine issue of material fact regarding the local standard of care. St. Alphonsus's expert, Karl Madaras–Kelly, Pharm.D., states: "Many of the statements made by Plaintiff's experts regarding the local standard of care for gentamicin use in 2000 for patients such as Mr. Edmunds are incorrect." This statement alone shows that there was a genuine issue of material fact regarding the standard of care for St. Alphonsus in 2000. As such, granting summary judgment was inappropriate. Therefore, this Court reverses the district court's decision granting summary judgment.

## C. Did the district court abuse its discretion by refusing to limit the number of expert witnesses during discovery?

The Edmunds argue that the district court's refusal to limit the number of expert witnesses was error. They contend that the disclosure of fifty-three expert witnesses by the defendants was an abusive tactic that prevented genuine discovery of expert opinions by deposition. St. Alphonsus replies that in actuality, it retained only three experts, and that most of the expert witnesses disclosed by other defendants were James' treating physicians and fact witnesses, not expert witnesses; therefore, there was no attempt by the defendants to "disclose an oppressive number of experts to prejudice" the Edmunds. Additionally, St. Alphonsus contends that the decision to exclude witness testimony is discretionary, and the district court did not abuse its discretion by refusing the limit the number of experts.

■ Trial courts are vested with the discretion to limit the number of expert witnesses allowed to testify. *Hansen v. Universal Health Servs. of Nevada, Inc.,* 115 Nev. 24, 974 P.2d 1158, 1161 (1999). When determining whether a district court abused its discretion, this Court considers three factors: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether it acted within the boundaries of its discretion and consistently with applicable legal principles, and (3) whether it reached its decision through an exercise of reason. *Lamar Corp.,* 133 Idaho at 40, 981 P.2d at 1150.

■ Here, the decision not to limit the number of experts was an abuse of discretion because the district court was not acting consistently with legal principles. First, the district court believed that limiting the number of witnesses was simply an evidentiary issue for trial, not a discovery matter. At the hearing on the Edmunds' motion to limit the number of expert witnesses the trial judge stated:

Also, sir, your motion to limit the number of expert witnesses I think is simply premature at this point. I've got to do a Rule 403 balancing. If I'm hearing from ten internists and they want to bring on Internist No. 11, then I've got to do a 403 balancing, and I wouldn't be able to do it before that point. There's no authority that I have to limit their number of experts simply because they have a certain number and you have a certain lesser number. So I don't think [this motion is] well taken and I'm not inclined to grant [it].

Later during the hearing, when the parties again referred to the number of expert witnesses disclosed by the defendants, the lower court stated: "I tried to say up front I don't care, I'm not playing a numbers game here.... [T]hat's not a legal issue for me."

■ However, in addition to ruling on evidentiary issues at trial, Idaho courts have the inherent authority to delineate issues for trial and indicate the expert witness or witnesses allowed to testify to each relevant issue during the discovery phase of litigation. Our law and our rules of civil procedure both provide that courts have the authority to limit the number of expert witnesses prior to

trial. We have long recognized that courts have broad, inherent powers to control discovery. *See Bailey v. Sanford,* 139 Idaho 744, 749, 86 P.3d 458, 463 (2004). This includes the inherent authority to limit the number of expert witnesses during discovery. *See Hansen,* 974 P.2d at 1161 (finding no abuse of discretion where district court disallowed three expert witnesses prior to trial when it did not preclude the party seeking to use the witness testimony from raising a relevant issue). We have also advised that "judges should not hesitate to exercise appropriate control over the discovery process." *Sierra Life Ins., Co. v. Magic Valley Newspapers, Inc.,* 101 Idaho 795, 801, 623 P.2d 103, 109 (1980) (quoting *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115, 134 (1979)).

 Our rules of civil procedure and the express purposes behind our discovery rules likewise recognize the court's authority to limit the number of expert witnesses. Rule 16(d)(4) provides that a court may limit the number of expert witnesses prior to trial. Rule 1(a) requires that the rules of civil procedure "be liberally construed to secure the just, speedy, and inexpensive determination of every action and proceeding." Our discovery rules were designed to prevent surprise at trial, *Pearce v. Ollie,* 121 Idaho 539, 552, 826 P.2d 888, 901 (1992), and discovery rules regarding expert witnesses were designed to promote fairness and candor, *see Radmer,* 120 Idaho at 89, 813 P.2d at 900. Effective cross-examination and rebuttal of expert witnesses requires advanced preparation and knowledge of that expert's testimony. *Id.* Neither effective cross-examination nor effective discovery designed to achieve "just, speedy, and inexpensive determination of every action" can take place when one party is allowed to disclose an oppressive number of expert witnesses and the trial court refuses to consider limiting expert testimony. St. Alphonsus's statement that they really only disclosed three expert witnesses should not have come at the appellate level, but should have been dealt with at an early pretrial conference.

At the very least the trial court should have considered the Edmunds' request to limit the number of experts as a discovery issue and examined the purposes behind our discovery rules when ruling on the motion. Ideally, the lower court should have held a conference pursuant to I.R.C.P. 16(d) to discuss limiting the number of experts and determine more fully on which issues these experts would be expected to testify in order to comport with the purposes behind expert witness discovery and to prevent possible discovery abuses. Idaho trial courts are expected to effectively and actively manage discovery to achieve the purposes of the discovery rules and to reach a "just, speedy, and inexpensive" determination of the issues. Therefore, this Court reverses the district court's denial of the Edmunds motion to limit the number of expert witnesses and remands for further proceedings consistent with this opinion.

**D. Did the district court err by adopting verbatim St. Alphonsus's proposed findings of fact and conclusions of law?**

After ruling from the bench on St. Alphonsus's motion for summary judgment, the district court adopted verbatim the proposed findings and conclusions submitted by St. Alphonsus. The Edmunds argue that it was error for the district court to do so and argue that these findings "do not represent genuine findings" by the trial court. St. Alphonsus argues that since findings and conclusions are not necessary to support decisions granting motions for summary judgment, the Edmunds argument is irrelevant. St. Alphonsus also argues that the Edmunds have failed to show that the findings and conclusions are clearly erroneous, so there is no basis for this court to find reversible error and contends that it is not reversible error for a court to adopt findings and conclusions that are essential to the trial court's ruling. However, we need not reach the issue of whether the district court committed reversible error by adopting verbatim St. Alphonsus's proposed findings and conclusions because we have reversed the district court's ruling on St. Alphonsus's motion for summary judgment.

**E. Is St. Alphonsus entitled to Attorney's Fees?**

St. Alphonsus seeks attorneys fees under I.A.R. 41 and I.C. § 12–121. Idaho Code § 12–121 allows the award of attorney's fees to the prevailing party. Since St. Alphonsus is not the prevailing party we decline to award attorney's fees.

## V. CONCLUSION

The Court affirms the district court's decision to exclude Dr. Rotschafer's testimony, but reverses the lower court's decisions striking Dr. Hollander's second affidavit and granting St. Alphonsus's motion for summary judgment. Additionally, this Court remands for further proceedings on the issue of limiting the number of expert witnesses. Finally, we refrain from deciding whether the trial court committed reversible error by adopting verbatim St. Alphonsus's proposed findings and conclusions. We decline to award attorney's fees to St. Alphonsus. Costs to the Appellants.

Chief Justice SCHROEDER and Justices EISMANN, JONES and KIDWELL, Pro Tem, concur.

