# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 40587

CHRISTIAN WESTBY, a minor, JAMES
WESTBY and KRISTINA WESTBY,
individually and as parents of CHRISTIAN
WESTBY,

    Plaintiffs-Appellants

v.

GREGORY SCHAEFER, M.D., and MERCY
MEDICAL CENTER, NAMPA,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2014 Term

2014 Opinion No. 121

Filed: November 25, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District, State of Idaho,
Canyon County. Hon. Renae J. Hoff, District Judge.

District court's order is <u>vacated</u> and the case is <u>remanded</u>.

Chasan, Walton, Boise, and Markum Group, Spokane for appellants. Mark
Kamitomo and Andrew M. Chasan argued.

Quane, Jones, McColl, PLLC, Boise, for respondent Schaefer. Jeremiah Quane
argued.

Givens, Pursley, LLP, Boise, for respondent Mercy Medical. Melodie A.
McQuade argued.

---

BURDICK, Chief Justice

Christian Westby, James Westby, and Kristina Westby (collectively "the Westbys")
permissively appealed the Canyon County district court's denial of the Westbys' motion to
reconsider the court's protective order granted to Mercy Medical Center and Dr. Gregory
Schaefer.

This case arose from the Westbys' claim that Dr. Schaefer's and Mercy Medical's
negligence resulted in lifelong brain damage to Christian Westby. Near the end of discovery, the
district court granted Mercy Medical and Dr. Schaefer's protective order motion to prohibit the

1

Westbys from deposing Mercy Medical and Dr. Schaefer's expert witnesses. The district court later denied the Westbys' motion to reconsider that protective order. The Westbys argue that the district court abused its discretion by not requiring any showing of good cause or unreasonable delay and basing its decision on a mistaken belief that the Westbys were dilatory. We vacate and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Christian Westby was born in November of 2007 to James and Kristina Westby. The Westbys alleged that Christian suffered brain damage from severe head trauma at birth as a result of Dr. Schaefer and Mercy Medical's negligence. Dr. Schaefer and Mercy Medical denied negligence.

The court set the trial for June 5, 2012. Dr. Schaefer and Mercy Medical's expert disclosure deadline was February 6, 2012. The pre-trial order stated that "discovery shall be completed no later than May 4, 2012." Dr. Schaefer disclosed his fourteen expert witnesses on February 6, 2012. Mercy Medical disclosed its expert witnesses on February 23, 2012, with the Westbys' permission because Mercy Medical's attorney was ill. Mercy Medical disclosed seventeen expert witnesses and additional treating providers. Those treating providers included three nurses and five doctors that had treated Christian and Kristina Westby.

The parties conducted an unsuccessful mediation on March 28, 2012. Two days later, the Westbys faxed a letter to defense counsel asking to depose eight experts. The Westbys' attorney proposed six dates in April and noted he was also available May 7 through May 18. On April 4, 2012, Dr. Schaefer filed a motion to prohibit the Westbys from taking his experts' depositions. Dr. Schaefer argued that taking expert depositions at this stage in the litigation was untimely, unreasonable, an extreme hardship, and that seven of the expert witnesses resided out of state. Later in the day on April 4, the Westbys faxed to defense counsel notice to take the depositions of nine expert witnesses at the office of Westbys' counsel. The notices scheduled the depositions on April 17, 18, 24, and 27, 2012.

On April 9, 2012, Dr. Schaefer filed another motion: a protective order motion for eight of the nine experts the Westbys gave notice to depose.[1] Mercy Medical joined this motion and also joined Dr. Schaefer's April 4 motion to prohibit depositions. Dr. Schaefer and Mercy

---

[1] The motion for a protective order did not oppose Dr. David Bettis's deposition. Dr. Schaefer had disclosed Dr. Bettis as a treating physician, but he was not one of Dr. Schaefer's retained experts.

Medical argued that the Westbys' proposed dates did not give reasonable notice because the Westbys had ample opportunity to take the depositions much earlier. They also argued that the depositions were unilaterally scheduled at the Westbys' counsel's office in Boise and seven of the experts had to travel from other states.

The district court heard Dr. Schaefer's and Mercy Medical's motion to prohibit depositions and their protective order motion on April 11, 2012. The parties argued about what disclosure was necessary and whether the Westbys' deposition requests were timely. During the hearing, the court recessed and encouraged the parties to discuss the issue. Mercy Medical supported its motion with an affidavit from its attorney, who averred that during that recess the Westbys' attorney, Mr. Chasan, said that he did not believe it was necessary to depose the experts and he would attempt to persuade his co-counsel, Mr. Kamitomo, of that. Mercy Medical's attorney averred that Mercy Medical and Dr. Schaefer's attorneys agreed to vacate and continue the hearing based upon this representation.

After the recess, Mr. Chasan agreed on the record to continue the motion and report back to the court: "So, Judge, we have agreed to continue the motion and the hearing, and I'm going to talk to co-counsel and we will confer among ourselves and then report back to the Court." He also noted that "all issues are on the table" and the court would hear if there was a further problem. The court confirmed that the next hearing would take place May 1, 2012. Mr. Chasan agreed and commented, "Of course, by then, this issue will be a little late."

On April 18, 2012, the Westbys filed a motion to strike the defense experts or alternatively compel expert depositions. This motion addressed the same protective order issues that the court continued at the April 11 hearing.

On April 23, the Westbys moved to continue the trial. The next day the district court held a telephonic hearing about vacating the trial. Mr. Kamitomo stated that his request was due to a family member's illness and "not being asked for any inappropriate delay or to reopen discovery." Mercy Medical and Dr. Schaefer opposed the motion, arguing that Mr. Chasan could try the case without Mr. Kamitomo and that everyone had planned their schedules around the trial dates. The court decided to vacate and reset the trial date:

> I'm going to go ahead and vacate the trial. I hope I'm doing the right thing at this
> point in time. I appreciate the arguments that were made to me. I just think that at
> this point probably it would be best, since he's been in it since the beginning, to
> vacate it and reset it.

3

The court then repeatedly noted that it would not extend the discovery deadlines:

> I am not extending any of the discovery. All those deadlines have been set, and so, again, I am going to freeze the status quo.

The court ended up resetting the trial date for October 15 through November 15, 2013.

On May 1, 2012, three days before the discovery deadline, the court heard the Westbys' April 18 motion to compel expert depositions. The court also heard Dr. Schaefer's and Mercy Medical's April 4 Motion to Prohibit Expert Depositions and April 9 Motion for Protective Order. These two motions were continued from the April 11 hearing. The court consolidated these three motions and heard them together because all three motions were essentially the same. At the hearing, the court acknowledged that the discovery deadline had not passed. However, the court granted the protection order and prohibited the Westbys from taking those depositions. The court stated:

> In ruling today, I cite Avila, A-v-i-l-a, versus Wahlquist, 126 Idaho 745, a 1995 case. And I quote, "Control of discovery is within the discretion of the trial court."
>
> Now, when I vacated the trial on April 11th, I also indicated to counsel that I was maintaining the discovery deadline. On that date, I heard arguments from the defendants that it would be almost impossible to make their experts available for depositions because of everyone's busy schedule.
>
> I acknowledge that the discovery cutoff has not passed. It is on May 4th. But because of the delay caused between April 11th and this date, I conclude, based on the facts of this case and the discretionary powers of this Court, that the plaintiffs shall be precluded from deposing defendants' experts.
>
> There were representations made on April 11th that possibly one counsel thought, Mr. Chasan, he could talk the other attorney out of it, meaning out of taking the depositions. But I conclude that it would be appropriate today to grant a protection order prohibiting the taking of the depositions of defendants' experts as sought in the motion before the Court.

The Westbys filed a motion to reconsider that the court heard on September 21, 2012. The court denied that motion and stated:

> This case was filed in December of 2009. The plaintiffs did not depose either defendant Schaefer's experts or defendant Mercy's experts during the year 2010, during the year 2011, or during the year 2012.
>
> As counsel has noted in this matter, the plaintiffs' counsel sent a letter requesting depositions of the defendants' experts on March 30th of this year. Because the defendants did not respond, the plaintiff then faxed a notice of taking a deposition on April 4th, 2012, listing possible dates in mid to late April.

4

This matter was then quickly set for hearing and the dispute came before me on April 11th, and at that time, I made quite a few inquiries of the attorneys about the taking of depositions.

It had been decades since I myself have practiced law or worked on a case of this type, and I believe the comments went something like we always depose the experts. And there was discussion that under 26(b)(4), that there was more information available and that some tactics had been utilized more recently by counsel to not take depositions of treating physicians or other experts.

In any event, there was some discussion between me and the attorneys on that issue because, again, it had been a long time since I had practiced law.

After that, it seemed to me that the parties ought to be able to reach a solution, so I recessed and asked the parties during the recess to work it out. I was advised it had been worked out.

I went back on the record, and it appeared the issue had been settled. I was not privy to all of the terms, but it apparently had not been resolved because the motion came back before me, to my surprise, on May 1st.

Prior to that hearing in time, I ended up vacating the trial date set for June.

. . . .

And I don't know whether Mr. Chasan said so, but it was my impression that it was pretty important for him, Mr. Kamitomo, to be there for trial, and that influenced me. I don't know whether I stated at that point in time on the record, but that did influence me because I was seriously considering keeping the trial date and having the case go forward with Mr. Chasan.

In any event, at the time that I vacated the trial, I stated that the discovery deadlines would not be extended even though the trial was being moved. Now we're back before me today.

The defendants, of course, are arguing that that discovery deadline should be maintained and that they were clearly inconvenienced. And I think there's been comments today that there weren't affidavits from their experts, but I obviously know that for the doctors and these experts to schedule, that's got to be done clearly in advance. And there was argument made to me that it would be difficult for them to be available on short notice for depositions.

The matter comes back before me today for reconsideration. Both defendants have argued, obviously, that my prior ruling was correct. It was a discretionary call. And in vacating the trial date to accommodate both counsel, I did freeze the discovery deadlines to limit prejudice to the defendants.

Now, in going back through commentary, and I looked at page 5 and 6 of the transcript of April 24th, it was Mr. Kamitomo who, in requesting that I vacate the trial, discussed the balancing of the respective interests of the parties. And that clearly was in my thinking when I decided to maintain the discovery deadlines as they had been set.

I'm not convinced that I was incorrect in any way in doing that. And, therefore, I believe that my prior ruling was correct and I'm unwilling at this point in time to change that or to grant the motion for reconsideration.[2]

After this denial, the Westbys pointed out to the district court that they could not have taken the their requested depositions in 2010 or 2011 because those experts were disclosed in February 2012. The district court replied that "I assume you could have deposed Dr. Schaefer from the time it was filed." The Westbys replied that they had previously deposed Dr. Schaefer and other witnesses. The court also denied the Westbys' motion to limit the number of defense expert witnesses. The district court later denied the Westbys' motion for permission to appeal the protective order.

The Westbys filed a motion with this Court for interlocutory review of that protective order on December 19, 2012. That motion requested permission to appeal (1) the July 20, 2012 order regarding the May 1, 2012 hearing and (2) the October 22, 2012 order regarding the September 21, 2012 hearing. This Court granted the Westbys' permissive appeal from the October 22, 2012 order, but denied the request to appeal the July 20, 2012 order. The Westbys timely filed their notice of appeal.

## II. ISSUES ON APPEAL

1. Whether the district court abused its discretion in denying the Westbys' motion to reconsider.
2. Whether the district court abused its discretion in denying the Westbys' motion to limit the number of expert witnesses.

## III. STANDARD OF REVIEW

Control of discovery is within the trial court's discretion. *Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 360, 956 P.2d 674, 677 (1998). Therefore, we review a district court's grant of a protective order for an abuse of discretion. *Id.* When a district court decides a motion to reconsider, "the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). If the original order was within the trial court's discretion, then so is the decision to grant or deny the motion to reconsider. *Id.* When we review a trial court's

---

[2] The district court's decision on the motion to reconsider indicates that the court froze all discovery in the case. Thus, the court barred Dr. Bettis's deposition along with the eight other depositions the Westbys requested. Dr. Schaefer and Mercy Medical did not contest Dr. Bettis's deposition in their protective order motion.

decision to grant or deny a motion for reconsideration, we use the same standard of review the lower court used in deciding the motion for reconsideration. *Id.*

In this case, the protective order was within the trial court's discretion, and the motion to reconsider that protective order was also within the court's discretion. The appellant has the burden of showing the trial court abused its discretion. *Walker v. Boozer*, 140 Idaho 451, 456, 95 P.3d 69, 74 (2004). We consider three factors to determine whether a trial court abused its discretion: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of its discretion and consistently with applicable legal principles; and (3) whether the court reached its decision through an exercise of reason. *Edmunds v. Kraner*, 142 Idaho 867, 873, 136 P.3d 338, 344 (2006).

## IV. ANALYSIS

This case concerns Idaho's discovery rules and a trial court's discretion. The district court explicitly recognized its discretion. Thus, the issues are whether the court (1) acted within the boundaries of its discretion and consistently with applicable legal principles and (2) reached its decision through an exercise of reason.

### A. The district court abused its discretion by denying the Westbys' motion to reconsider.

The parties disagree over this appeal's scope. Dr. Schaefer and Mercy Medical assert that the Westbys improperly focus on the district court's May 1, 2012 protective order decision because the precise issue is whether the district court abused its discretion by denying the motion to reconsider the protective order.

The Westbys requested permission to appeal (1) the July 20, 2012 order granting the district court's protective order and (2) the October 22, 2012 order denying the Westbys' motion to reconsider. This Court granted the Westbys' permissive appeal from the district court's October 22, 2012 order, but denied permission to appeal the July 20, 2012 order granting the protective order. Hence, the district court's grant of a protective order is not directly on appeal.

However, the protective order's legal standards are relevant to whether the district court abused its discretion in denying the Westbys' motion to reconsider. A motion for reconsideration allows the court to reconsider the correctness of an interlocutory order. *Johnson v. N. Idaho Coll.*, 153 Idaho 58, 62, 278 P.3d 928, 932 (2012). Because on a motion to reconsider the district court reviews an interlocutory order, the court has to consider the standard for granting the underlying interlocutory order. *See* I.R.C.P. 11(a)(2)(B). So to determine whether the district

7

court abused its discretion in denying the motion to reconsider, we must consider how the court reviewed its protective order decision. It is impossible to review the district court's denial of a motion to reconsider the protective order without considering the protective order standard. Thus, the legal standards for a protective order and the trial court's reasoning in granting its protective order are necessary to consider this issue.

Mercy Medical argues that the district court acted within its discretion because the court cited key case law, carefully reviewed the facts, and made its decision by an exercise of reason. However, we hold the district court abused its discretion because the court (1) did not follow applicable legal standards when it terminated discovery without citing facts that showed good cause and (2) did not reach its decision through an exercise of reason.

A party who requests a protective order to limit discovery must show good cause. Idaho Rule of Civil Procedure 26(a) provides, "Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; . . . and requests for admission." The frequency of these methods is not limited unless a court order under Rule 26(c) limits it. I.R.C.P. 26(a). Idaho Rule of Civil Procedure 26(c) states:

> **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters. . . .

Therefore, the court can use a protective order to limit or stop discovery when a party shows good cause for that result.

We have not previously ruled on whether I.R.C.P. 26(c) requires a trial court to find good cause with factual proof when it grants a protective order. We have held a district court that specifically found unreasonable delay did not abuse its discretion. *Bailey v. Sanford*, 139 Idaho 744, 749, 86 P.3d 458, 463 (2004). In *Bailey*, the district court granted a protective order after the defendant gave the plaintiffs notice a week before the trial that the defendant would take a witness's deposition in California. *Id.* The district court found that the defendant unreasonably

8

delayed taking the deposition because he could have taken the witness's deposition for two years. *Id.* The district court also found that the plaintiffs would be prejudiced, and we noted that it was unduly burdensome to expect the plaintiffs to travel to California on short notice the week before trial for a deposition. *Id.* Because the delay and prejudice were supported by facts, we held the district court did not abuse its discretion.

Federal courts have held that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *See also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130; *See also United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (Rule 26(c)'s protective order standard "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."). A result of these requirements is that trial courts should also cite a reason for good cause. *See Garrett*, 571 F.2d at 1326 (holding that a court abused its discretion when it did not cite any reason for its protective order grant after the government made "a bare request"). Thus, trial courts must cite a reason for good cause and cannot rely on broad, non-factual requests and conclusory statements.

We can follow this interpretation of F.R.C.P. 26(c) because I.R.C.P. 26(c) is similar. We prefer to interpret the Idaho Rules of Civil Procedure in conformance with interpretations of the same language in the federal rules. *Obendorf v. Terra Hug Spray Co., Inc.*, 145 Idaho 892, 897, 188 P.3d 834, 839 (2008). "That preference is obviously limited to situations in which our rules and the federal rules contain identical language." *Id.* Idaho Rule of Civil Procedure 26(c) and F.R.C.P. 26(c) are similar, but not identical.[3] However, both rules have language that allows the court to issue a protective order "for good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Because this particular

---

[3] F.R.C.P. 26(c)(1) provides: "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

language is identical, we hold that I.R.C.P. 26(c) also requires a party to use specific facts to show good cause.

Requiring factual support to show good cause is consistent with I.R.C.P. 26(c)'s purpose. Indeed, "Rule 26 of the Idaho rules, like its federal analogue, was designed to promote candor and fairness in the pre-trial discovery process." *Radmer v. Ford Motor Co.*, 120 Idaho 86, 89, 813 P.2d 897, 900 (1991). This Court has also stated:

> The purpose of our discovery rules is to facilitate fair and expedient pretrial fact gathering. It follows, therefore, that discovery rules are not intended to encourage or reward those whose conduct is inconsistent with that purpose.

*Edmunds*, 142 Idaho at 873, 136 P.3d at 344. Another purpose of the discovery rules is to prevent surprise at trial. *Pearce v. Ollie*, 121 Idaho 539, 552, 826 P.2d 888, 901 (1992). Therefore, we require some factual support beyond assumption to show good cause.

In this case, part of the trial court's decision on the motion to reconsider relied on assertions instead of facts. At the motion to reconsider hearing, the district court noted that it already knew that expert scheduling must be done in advance:

> The defendants, of course, are arguing that that discovery deadline should be maintained and that they were clearly inconvenienced. And I think there's been comments today that there weren't affidavits from their experts, but I obviously know that for the doctors and these experts to schedule, that's got to be done clearly in advance. And there was argument made to me that it would be difficult for them to be available on short notice for depositions.

The district court's remark that it "obviously knew" that doctors needed to be scheduled in advance is an assumption that the experts could not be scheduled on short notice. This is a conclusory statement that did not rely on any specific demonstration of fact.

Also, Dr. Schaefer and Mercy Medical offered only argument that they tried to schedule the depositions and had conflicts. Dr. Schaefer argued only that scheduling on short notice would be difficult given the experts' availability, work schedules, and that all but one expert resided outside of Idaho. Mercy Medical's counsel argued that he tried to see if his experts were available on those dates, but they were not. These arguments about availability were not supported by affidavits or any other facts. Hence, to properly deny the Westbys' motion to reconsider, the district court had to have relied on some other facts that established good cause.

Dr. Schaefer contends that the district court properly denied the motion to reconsider because (1) the matter came before the court after Mr. Kamitomo secured a trial continuance; (2) the court froze the discovery deadlines when it vacated the trial; and (3) the court partly vacated

the trial based upon "balancing the respective interests of the parties." Mercy Medical argues that the scheduling predicament was the Westbys' own creation because they chose to delay the expert depositions and ended a hearing on the matter less than a month before the discovery deadline.

Overall, the trial court's decision to deny the motion to reconsider was based on the court's perception that the Westbys had delayed their depositions. In its protective order decision, the district court stated:

> Now, when I vacated the trial on April 11th, I also indicated to counsel that I was maintaining the discovery deadline. On that date, I heard arguments from the defendants that it would be almost impossible to make their experts available for depositions because of everyone's busy schedule.
>
> I acknowledge that the discovery cutoff has not passed. It is on May 4th. But because of the delay caused between April 11th and this date, I conclude, based on the facts of this case and the discretionary powers of this Court, that the plaintiffs shall be precluded from deposing defendants' experts.

These findings do not satisfy I.R.C.P. 26(c). The court never expressly articulated that the delay was unreasonable given specific facts. Instead, the court vaguely referred to "the delay caused between April 11th and this date" as the reason for granting the protective order. The court does not say what about the delay gave it pause or articulate whether the problem was the timing, the trial continuance, or a finding that the experts were unavailable on those dates. Unlike in *Bailey*, where a court found unreasonable delay and prejudice because defendant's deposition request was in another state for the week before trial, here the court did not find that the request was either unreasonable or occurred too late, or that the deposition location was a problem. Further, the court stated that it vacated the trial on April 11. This is wrong; the district court vacated the trial on April 24. This factual error makes it even more ambiguous as to what "the delay between April 11 and this date" means. We cannot identify that the district court found any unreasonable delay or prejudice. We also cannot identify that Mercy Medical and Dr. Schaefer showed a factual basis for good cause for the protective order. Thus, it appears that the court did not act within the legal standards applicable to granting a protective order under I.R.C.P. 26(c).

Whether the district court abused its discretion in denying the motion to reconsider involves the district court reconsidering whether it correctly applied the proper legal principles to the protective order. When the court reconsidered its decision, it stated:

11

> In any event, at the time that I vacated the trial, I stated that the discovery deadlines would not be extended even though the trial was being moved. Now we're back before me today.
>
> . . . Both defendants have argued, obviously, that my prior ruling was correct. It was a discretionary call. And in vacating the trial date to accommodate both counsel, I did freeze the discovery deadlines to limit prejudice to the defendants.
>
> Now, in going back through commentary, and I looked at page 5 and 6 of the transcript of April 24th, it was Mr. Kamitomo who, in requesting that I vacate the trial, discussed the balancing of the respective interests of the parties. And that clearly was in my thinking when I decided to maintain the discovery deadlines as they had been set.
>
> I'm not convinced that I was incorrect in any way in doing that. And, therefore, I believe that my prior ruling was correct and I'm unwilling at this point in time to change that or to grant the motion for reconsideration.

The district court stated that "balancing of the respective interests of the parties" was its reason for granting the protective order. While the court does mention that it vacated the trial and froze discovery to limit prejudice, it still did not mention any specific factual demonstration of good cause. We cannot identify that defendants showed good cause for the protective order, especially in light of the court's sixteen-month continuance of the trial. The district court therefore abused its discretion by not acting consistently with the legal principles that require some particular facts to show good cause.

The district court also abused its discretion because it did not deny the motion to reconsider through an exercise of reason. Instead, the district court unreasonably relied upon mistaken facts. To begin, the court's statements lead us to conclude the court thought the Westbys were dilatory because they failed to depose the experts for three years. The court stated:

> This case was filed in December of 2009. The plaintiffs did not depose either defendant Schaefer's experts or defendant Mercy's experts during the year 2010, during the year 2011, or during the year 2012.

Mercy Medical and Dr. Schaefer argue the court was only reciting procedure. However, given that the experts were not disclosed until 2012, the court pointing out that the Westbys did not depose experts in 2010 and 2011 shows that the court thought the Westbys waited for two years to request depositions. The Westbys did not wait for two years. Dr. Schaefer disclosed his experts on February 6, 2012, and Mercy Medical did the same on February 23, 2012. The Westbys asked to depose Mercy Medical and Dr. Schaefer's experts on March 30, 2012, which was 53 days after Dr. Schaefer's disclosure and 37 days after Mercy Medical's disclosure. The

12

parties had an unsuccessful mediation on March 28, 2012. The Westby's requested the expert depositions two days later. Waiting fifty days to ask for a deposition is much different from waiting three years, particularly when those depositions were promptly requested after mediation.

The Westbys' attorney brought this up after the court denied the motion, stating that "you had mentioned that the case had been filed in 2010, nothing was done in '10, 2011, or '12. But if you will note, we did not receive a disclosure until February 8th of 2012, so the issue of requesting depositions was irrelevant before that time." The district court replied that "I assume you could have deposed Dr. Schaefer from the time it was filed." The Westbys' attorney replied, "We did. If it's not clear . . . the depositions that we could take were taken." Given the court's implication that the Westbys waited several years to take the depositions, the court was mistaken in its factual timeline. The court did not correct its mistake in light the Westbys' explanation that they took all the depositions they could before Mercy Medical and Dr. Schaefer's expert disclosures. Therefore, the court's reliance on these mistaken facts is unreasonable.

The district court was also mistaken when it stated that the court thought the parties had "worked out" the protective order dispute after the April 11 hearing. The court noted that after a discussion with the attorneys on deposition practices, it recessed and asked the parties during the recess to work it out. The court stated:

> I was advised it had been worked out.
>
> I went back on the record, and it appeared the issue had been settled. I was not privy to all of the terms, but it apparently had not been resolved because the motion came back before me, to my surprise, on May 1st.

However, nothing in the record allowed the district court to reasonably conclude that it thought the parties had "worked it out" on April 11. After the recess, the Westbys' counsel, Mr. Chasan, agreed to continue the motion, talk to co-counsel, and report back to the court. Dr. Schaefer's attorney emphasized that reporting included whether Mr. Chasan would take the depositions and that the court would hear if there was a further problem. The court confirmed that the next hearing would take place on May 1, 2012. Thus, the transcript does not show that the parties had worked out any issue.

The parties' actions after the April 11 hearing also show the parties had not worked the protective order issue out. On April 18, the Westbys faxed Mercy Medical and Dr. Schaefer a letter again requesting the depositions. The Westbys also filed a motion to strike the defense

13

experts or alternatively compel expert depositions. This motion addressed the same issues that the court heard and continued on April 11. Hence, the court had further notice that the issue was not fully settled. Therefore, the district court could not reasonably say the issue was "worked out," and relied on a mistaken premise in its decision. The protective order was always supposed to be before the court on May 1 and was not a surprise at all. The court's lack of analysis in its decision and reliance on mistaken facts do not show a decision reached through an exercise of reason. Because the court's decision to deny the motion to reconsider was based upon mistaken facts, unarticulated reasons, and no particular facts to support good cause, the district court abused its discretion. We therefore vacate the district court's October 22, 2012 order and remand to the district court.

**B. The Westbys' motion to limit the number of expert witnesses.**

Mercy Medical and Dr. Schaefer contend that the Westbys argue issues beyond the permissive appeal's scope. This Court accepts permissive appeals under Idaho Appellate Rule 12, which provides that permissive appeals are not effective "until the Supreme Court shall enter an order accepting such interlocutory order or decree as appealable and granting leave to a party to file a notice of appeal within a time certain." When this Court considers a permissive appeal, "we must 'address only the precise question that was framed by the motion and answered by the trial court.'" *Pioneer Irr. Dist. v. City of Caldwell*, 153 Idaho 593, 596, 288 P.3d 810, 813 (2012) (quoting *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989)).

Mercy Medical contends that the Westbys improperly argue on appeal about the denial of their motion to limit the number of defense expert witnesses. Indeed, ten pages of the Westbys' appellate brief addresses the trial court's failure to limit the number of experts. While the Westbys do not mention the motion directly, they argue "the trial court abused its discretion by failing to reduce or otherwise limit the 29 expert witnesses disclosed by Defendants." Based on this language, the Westbys argued the motion to limit the number of expert witnesses. Mercy Medical contends that this Court cannot consider this issue because the Westbys only appealed the court's denial of the motion to reconsider its protective order grant.

Although there may be some question about the scope of this appeal, our order says we granted the Westbys permission to appeal from the district court's October 22, 2012 order Re: September 21, 2012 hearing. That October 22, 2012 order denied two of the Westbys' motions: (1) the motion to reconsider and (2) the motion to limit the number of expert witnesses. Today

14

we only decide that the district court abused its discretion in denying the motion to reconsider. However, the new district judge is not required to accept what the district court did in its prior proceedings, including any other issues within the October 22, 2012 order. The protective order decision is still interlocutory. Idaho Rule of Civil Procedure 11(a)(2)(B) allows a court to reconsider its legal ruling on an interlocutory order before a final judgment has been entered. *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 68, 878 P.2d 762, 767 (1994) (holding that when one judge was on administrative leave, another judge could reconsider and reverse previous judge's interlocutory orders). If the district court grants the Westbys' motion to reconsider, the court can consider reopening discovery at its discretion. This case is not a situation where the doctrine of "law of the case" applies because no final judgment was entered in the district court after the court issued the protective order. *See Shirey*, 126 Idaho at 68, 878 P.2d at 767 (1994). Thus, on remand the district court can reconsider the entire order.

The district court's decision to deny the Westbys' motion to limit expert witnesses does seem unreasonable given our holding in *Edmunds*. In that case, the district court abused its discretion when it decided not to limit the number of expert witnesses because the court had not acted consistently with legal principles. *Edmunds v. Kraner*, 142 Idaho 867, 877, 136 P.3d 338, 348 (2006). One reason we held the trial court did not act consistently with legal principles was because it believed that limiting the number of witnesses was simply an evidentiary issue for trial, not a discovery matter. *Id*. The trial court in *Edmunds* stated:

> Also, sir, your motion to limit the number of expert witnesses I think is simply premature at this point. I've got to do a Rule 403 balancing. If I'm hearing from ten internists and they want to bring on Internist No. 11, then I've got to do a 403 balancing, and I wouldn't be able to do it before that point. There's no authority that I have to limit their number of experts simply because they have a certain number and you have a certain lesser number. So I don't think [this motion is] well taken and I'm not inclined to grant [it].
>
> . . . .
>
> I tried to say up front I don't care, I'm not playing a numbers game here. . . . [T]hat's not a legal issue for me.

*Id.* We held the trial court in *Edmunds* erred because trial courts have the inherent authority during discovery to delineate issues for trial and indicate the experts allowed to testify to each relevant issue. *Id.* Idaho's discovery rules and the purpose behind those rules also recognize the trial court's authority to limit the number of expert witnesses. *Id.* at 878, 136 P.3d at 349. Because of this authority, we held the district court should have at least considered limiting the

15

number of witnesses as a discovery issue and explained the purposes of the discovery rules in its ruling. *Id.*

Here, the district court also did not consider that it could limit the number of expert witnesses as a discovery issue and did not explain the purposes of the discovery rules. The court stated:

> Bottom line, I cannot conclude at this time that Dr. Schaefer or Mercy Medical Center has listed an oppressive number of experts. The Court is going to have to listen to the evidence as it comes in and decide whether testimony becomes cumulative.
>
> I have to listen to the evidence and rule on the objections. Proper foundations will have to be laid. Offers of proof may have to be made based on objections of the plaintiffs, and no evidence regarding speculation or conjecture will be allowed in.
>
> Now I've had to sit and ponder, you know, how these 403 cumulative objections are going to come down. In the trials that I had as a practitioner and here as a judge, they have come in during the course of trial. And they can only really come in when we know they're cumulative on the record, and it's very difficult for me at this time to make this call.
>
> Furthermore, there is a period of time between now and the trial. I don't know whether tactics will change or how the witnesses will come in. I'm not inclined today -- I agree to make a decision on limiting any experts. It might be different if I felt that there was an oppressive number of experts. I don't really see that here, and I think it's just going to have to be a call made at the time the case comes in at trial. Again, offers of proof may be the requirement.

The district court in this case focused on the need to do a I.R.E. 403 balancing at trial, similar to the trial court in *Edmunds*. The court in this case also never explained that limiting the number of witnesses could be a discovery issue or how this many witnesses comported with the purposes of the discovery rules.

We remind district courts to consider the legal principles we articulated in *Edmunds*. District courts have the discretion to limit the number of expert witnesses allowed to testify. *Edmunds*, 142 Idaho at 877, 136 P.3d at 348; *Ruud v. United States*, 256 F.2d 460, 463 (9th Cir. 1958). The district court has discretion to exclude relevant probative evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403; *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (When discussing F.R.C.P. 403, the court commented that

the need for a court to evaluate evidence under that rule "is especially true with respect to expert witnesses.") A trial court can exclude evidence before trial. *See Kirk v. Ford Motor Co.*, 141 Idaho 697, 702, 116 P.3d 27, 32 (2005). Thus, a district court can use its discretion to limit the number of expert witnesses before trial.

It follows that a trial court cannot exclude witnesses arbitrarily or simply because a party has disclosed a large number of witnesses. *See Padovani v. Bruchhausen*, 293 F.2d 546, 550 (2d Cir. 1961) ("But in no event at this pre-trial stage should witnesses be excluded because of mere numbers, without reference to the relevancy of their testimony."). Instead, the court should focus on the unique facts of the case. *See Coal Res., Inc., No. 11 v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769–70 (6th Cir. 1989) (holding a trial court did not abuse its discretion when it limited the number of experts because it believed that two experts would be adequate for the evidence covered and that no new issues would arise requiring additional experts due to the length of the time the case had gone on). Facts a court can consider include the similarity in expert opinions and credentials. *Welch v. McLean*, 191 S.W.3d 147, 165 (Tex. App. 2005) (holding the record demonstrated a legitimate basis to conclude the court acted within its discretion to exclude as cumulative an expert's testimony based on a similarity in opinions and credentials).

Our rules of civil procedure also recognize the court's authority to limit the number of expert witnesses. *Edmunds*, 142 Idaho at 878, 136 P.3d at 349. In *Edmunds* we stated:

> Rule 16(d)(4) provides that a court may limit the number of expert witnesses prior to trial. Rule 1(a) requires that the rules of civil procedure "be liberally construed to secure the just, speedy, and inexpensive determination of every action and proceeding."

*Id.* While I.R.C.P. 16(d) has since been repealed, I.R.C.P. 1(a) is still effective. Also, the purposes of our discovery rules are the same as we articulated in *Edmunds*:

> Our discovery rules were designed to prevent surprise at trial, *Pearce v. Ollie,* 121 Idaho 539, 552, 826 P.2d 888, 901 (1992), and discovery rules regarding expert witnesses were designed to promote fairness and candor, *see Radmer,* 120 Idaho at 89, 813 P.2d at 900. Effective cross-examination and rebuttal of expert witnesses requires advanced preparation and knowledge of that expert's testimony. *Id.* Neither effective cross-examination nor effective discovery designed to achieve "just, speedy, and inexpensive determination of every action" can take place when one party is allowed to disclose an oppressive number of expert witnesses and the trial court refuses to consider limiting expert testimony.

*Edmunds*, 142 Idaho at 878, 136 P.3d at 349. Because of these purposes; the need to liberally construe the discovery rules to ensure a just, speedy, and inexpensive decision in every action;

17

and the trial court's discretion to limit expert testimony before trial and exclude relevant evidence based on I.R.E. 403; trial courts cannot overlook the fact that they can limit the number of expert witnesses during discovery. Trial courts do not always have to wait until trial to limit the number of expert witnesses.

**C. Dr. Schaefer and Mercy Medical are not entitled to attorney fees on appeal.**

Mercy Medical argues it is entitled to attorney fees and costs under Idaho Code section 12-121 because the Westbys brought an unreasonable appeal without adequate legal foundation. Mercy Medical and Dr. Schaefer contend that the Westbys' brief concerned issues beyond the appeal's scope and gave an inaccurate procedural history. Because Mercy Medical and Dr. Schaefer are not the prevailing parties, we do not award either party attorney fees on appeal.

## V. CONCLUSION

We hold the district court abused its discretion in issuing its October 22, 2012 order. We vacate that order in all respects and remand to the district court for further proceedings. Neither party is entitled to attorney fees on appeal. Costs to the Westbys.

Justices EISMANN, J. JONES, HORTON and WALTERS, J., Pro tem, **CONCUR.**

18